Next case on for argument is United States v. Duckett. We'll let the courtroom clear, and then that way we can give you our full attention. Mr. Unger. Thank you, Your Honor. May it please the Court, I'm Randall Unger. I represent Mr. Duckett on this appeal. We submit, basically, there was no conspiracy in this case. The government was required to prove that Mr. Duckett and Mr. Anderson agreed on the essential nature of the plan, which, as the government charged, was to defraud the city of Hartford of funds. But, according to the trial testimony, Mr. Anderson repeatedly insisted that he'd done nothing wrong, and that his intent, however misguided, was always to fulfill his contract with the city of Hartford, which he believed was Mr. Duckett's hope as well. Anderson insisted that he never intended to steal money from the city of Hartford, and that the funds that he expended, which were earmarked for his contractors, were for the specific purpose of obtaining private funding to complete the project. In fact, Mr. Anderson even swore that he still intended to complete the project up to the very time that the city of Hartford terminated its contract with him. So basically, what we're submitting to this court is, there was never a meeting of the minds between Anderson and Duckett to defraud the city of Hartford, and therefore, no conspiracy was established. Didn't Anderson testify that at the time he sent an architecture subcontractor's money to Molex, he, quote, knew it was wrong, but he sent it anyway because your client advised him to do it? It seems that Anderson, what he was really saying was, in hindsight, after he was arrested and prosecuted on the charges in this case, then he came to the realization, oh, maybe what I did was improper. But what he insisted throughout his testimony was that at the time he was engaging in these transactions, he did not think that what he was doing was wrong. Mr. Unger, you seem to be arguing that neither party had a good faith, they both had a good faith belief that it was all going to work out and they were going to get things done. Correct. But hasn't that doctrine of good faith belief been rejected by this circuit? And the question is not whether they intended it for all to work out in the end, but whether what they did was actually defraud the other party. Yes, and I'm not disagreeing with that general rule. What I'm suggesting, however, is that at the time these events were occurring, neither, and I'll give Mr. Anderson the benefit of the doubt, and as he testified, he did not believe that what he was doing was unlawful. So how is that different from what Judge Kelly just asked you about? Well, I think it really relates to the question of was there a conspiracy. And if neither of the so-called alleged conspirators are acting with a criminal intent, with an intent to defraud the city, I don't see how they can establish that there was a conspiracy. Didn't some of the money involved go directly to Duckett for luxury items? Didn't he spend some of the money on his own personal comfort? Well, he had expenses. Expenses. Luxury cars, shopping trips, et cetera, things like that. I think we have a situation with Mr. Duckett where he was intending to deal with some very high-level people, which in his mind, I think, and I think this is really the way it was, he believed that he had to dress the part to act the part. He was embarking on a venture. But he was taking money that was meant for the venture and spending it on his own personal expenses so that he could dress the part. Well, but as I say, I'm using that expression, dressing the part, and I don't really mean it well in a way it might be literal in this case. But what he was doing was, here he is going to see the commissioner of the NASL, where the entrance fee for getting a professional soccer team is $75 million. In his mind, he's not going to drive up in a secondhand jalopy and meet the commissioner of this sport and meet with owners of the other professional teams, where he's seriously making a proposal to bring a professional soccer team to the city of Hartford. You know, this is part of it, where you have to show these people you're serious, there are resources behind you, and you're worthy. You're trying to promote the city of Hartford to really step up in class, to have a serious, actual professional soccer team, which is what the city of Hartford wanted. But as you know, the standards for sufficiency of the evidence are very high, a high bar for you to meet. Understood. And the jury heard this evidence. There was evidence that your client solicited an invoice, multiple invoices, but just take one, an invoice from this company, Big Span, $450,000. It was submitted to the city, even though no work had been done, and money was obtained from the city as a result. What would be unreasonable on the jury's part to say that that is substantial? That's evidence of fraud. If that were correct, as the court has put it, I might not disagree. However, the evidence, in fact, the credible evidence, was that Mr. Duckett did not submit invoices to the city of Hartford. When you say credible, that's not for us to decide. The jury can, in substance, pick and choose whom it is going to believe. When I use the word credible, I'm comparing Anderson, the cooperating witness, who made the claim in his testimony that Mr. Duckett submitted invoices directly, flatly contradicted by the director of economic development for the city of Hartford that the government called, who testified, no, in fact, Mr. Duckett never submitted any invoices. And I think the IRS agent, as well, conceded that Mr. Duckett had not submitted invoices. So that's what I meant by credible. I don't believe there was any reliable evidence presented in this case that Mr. Duckett ever submitted any invoice directly. All of them were submitted by Mr. Anderson. I know my time is running short. I just wanted to quickly address the testimony and the evidence regarding Mr. Duckett's alleged NFL career. It seems to me that more was made of that than needed to be or should have been. The testimony was that Mr. Duckett made claims prior to his entrance into this project, that he had either played in the NFL or that he had had a tryout with an NFL team, and the government went to great lengths to prove that he had lied about that part of his background. Nobody relied on any of those assertions. Nobody claimed that they caused any detriment. It was an example of somebody boasting, exaggerating, puffing his background. It had no bearing that I could tell with regard to his involvement in this project and the extent to which the government presented the volume of evidence to show that he had lied. And basically, I believe that the evidence was presented simply to show his propensity to lie, and therefore, as propensity evidence, it should not have been admitted before the jury. And I think that had a real detrimental impact on the verdict that the jury rendered. Thank you. Thank you. We reserve some time for rebuttal. Ms. Corwin. Thank you, Your Honor. May it please the Court, Sarah Corwin on behalf of the United States. Your Honor, picking up with your question, Mr. Anderson did testify that he knew what he was doing was wrong and that he discussed that fact with Mr. Duckett. And I would cite the Court to the appendix at page 924 and 925. That's the government appendix. Question, did you think what you were doing was right or wrong? Answer, wrong. Question, who did you discuss that with? Answer, Mr. Duckett. So even setting aside, Your Honors, for a moment Mr. Anderson's testimony, there was overwhelming evidence of the conspiracy. Your Honors mentioned the Big Span invoices. The government submits that even if the jury were just looking at those as an example, there would be evidence that would support the conspiracy and the wire fraud convictions. There was testimony the invoices were sent to Mr. Duckett. He forwarded those or there was the exhibits themselves. He forwarded those to Mr. Anderson. They were submitted to the city. Two different city employees, the treasurer, Adam Cloud, as well as a development worker, testified that Mr. Duckett called both of them to inquire as to the status of the payments on those invoices. And then, of course, Your Honor, the evidence that when the money hit the PSMG accounts, where it went, $644,000 to Mr. Duckett, his friends, and associates alone. Your Honors, coupled with the testimony of the other PSMG employees who testified that they, while not involved with the scheme, raised concerns about what was going on, confronted Mr. Anderson and Mr. Duckett. That was Mr. Nowajowski and Mr. Davidson, as well as the contemporaneous e-mails and the video recordings and the like, provided a sufficient basis for the jury to conclude that there was a conspiracy between Mr. Duckett and Mr. Anderson, and the verdict should be affirmed. Your Honors, just on the issue of the NFL evidence, I would reiterate that this was not something that the government sought to inject into the trial. This was something that Mr. Duckett sought to inject into the dealings with the city of Hartford. These were not statements made before the fraud began. These were statements made to the victim of the fraud during the course of the charge conspiracy. I would cite the court to Exhibits 4C, 4D, 4F, 6C, and 7, which were all presentations, PowerPoints, e-mails, and the live video recording made by Mr. Duckett to the city where he is touting his professional experience in the NFL, offering it to show his financial wherewithal, but also his background in professional sports development. And the government's myth of that went directly to both Mr. Duckett's intent to defraud the city of Hartford and to engage in the scheme, but also to rebut that he had a good faith in his dealings with the city. So unless the Court has any questions. Let me just ask on the NFL. It was brief by my read of the record, but there was an offer, I think by Mr. Duckett, to stipulate that he was not a member of the NFL. Does that have any bearing on our consideration of the 403 analysis? I don't think it should, Your Honor, because the government should be allowed to try the cases it sees fit. This was – it would have led, in the government's view, to sort of an awkward presentation of evidence where this was so prevalent on behalf of Mr. Duckett and his dealings with the city. And I would note that Mr. Duckett did call a witness to testify that he did have an affiliation with the NFL. So it was not clear, really, what position he was willing to take on that front. And where his counsel was arguing that he had good faith and fully wanted to see this through, the government believed that that evidence that he was misrepresenting his professional background was evidence that the jury should hear. Thank you. Thank you. Mr. Hunger? Now, while the government just pointed out that Mr. Duckett gave the Big Span invoices to Mr. Anderson, I don't think there's any question that it was Mr. Anderson who submitted them directly to the city of Hartford. And as I understand it, the invoices that were created by this company, Big Span, were sent out months and months before Anderson actually submitted them to the city for payment. So I don't think it's all that clear that this was Mr. Duckett's idea, at least at the time when they were actually submitted by Anderson. And remember also, it was Anderson's company, PSMG, that had the contract with the city of Hartford. Mr. Duckett had no legal connection whatsoever with the city. Mr. Anderson was in control of the PSMG accounts. It was his accounts that was receiving the funds from the city of Hartford, not Mr. Duckett. And I think in terms of the evidence of the so-called NFL background, I just think, for one thing, I don't even understand what the connection was and why somebody who might have had an NFL career becomes a financial guru and somebody who can save the project that Anderson had with the city of Hartford. I just simply don't see the connection. Maybe there's some celebrity that attaches to having played as a professional football player, but I don't see how that then connects up to confidence that this is a person who can come up with hundreds of millions of dollars for the project. So I think there's that basic question of what was the connection in the first place. And then when you consider the volume of evidence and the time and effort the government spent in proving that Mr. Duckett had lied about his NFL background, I just think it was too much, and I think it had a definite severe impact on the jury's consideration of the charges. Thank you. Thank you both. We'll reserve decision in this case.